IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YURI J. STOYANOV            *
                            *
v.                          *    Civil Action No. WMN-07-1863
                            *
RAY MABUS, SECRETARY OF THE *
NAVY, <u>et al.</u>

  *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## <u>MEMORANDUM</u>

Defendants filed a Motion to Dismiss, or in the
Alternative, for Summary Judgment in this action on January 14,
2011.  ECF No. 26.  After asking for and receiving several
extensions, Plaintiff finally filed an opposition to the motion
on May 9, 2011.  ECF No. 35.  The opposition memorandum was 49
pages long and, contrary to the requirements of the Local Rules,
<u>see</u> Local Rule 102.2.b, much of it was single-spaced.  The
opposition was accompanied by 23 exhibits, including Plaintiff's
57-page "Declaration."  In response to Defendants' request for a
brief extension of time to file a reply to that opposition,
Plaintiff opposed that request and moved for entry of default
against Defendants.  ECF No. 38.  The Court granted Defendants'
request for an extension and Defendants filed a short reply
memorandum.  Plaintiff then filed a 26-page "Motion for
Additional Sanctions and Leave to Respond to Defendant's 6/22/11

Reply," ECF No. 40, much of which was also single-spaced and redundant of material in his opposition.

Upon a careful review of the materials submitted by the parties, the Court determines that no hearing is necessary, Local Rule 105.6, and that Defendants' motion should be granted and Plaintiff's motions denied. As to Plaintiff's motion for default, fairness required the granting of a reciprocal extension for Defendants as was granted for Plaintiff. As to Plaintiff's motion for leave to file a surreply, the Court finds that Defendants presented no new arguments or evidence in their reply memorandum to justify an additional responsive pleading from Plaintiff. The Court also notes that Plaintiff included as grounds for both motions the claim that government's counsel had engaged in "continuous intentional misrepresentations, fraudulent assertions, and deceptions to the Court." ECF No. 40 at 1; see also ECF No. 38, passim (alleging, inter alia, "deliberate misrepresentations," "fraudulent assertions," and "unwarranted contentions" on the part of counsel for Defendants). The Court will address those allegations below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is one of more than a dozen suits filed by Plaintiff Yuri Stoyanov and his twin brother, Aleksandr Stoyanov, against

many of these same Defendants.[1]  The Stoyanovs were born in
Russia in 1955 and became citizens of the United States in 1984.
Both worked as scientists at the Department of the Navy's Naval
Surface Warfare Center, Carderock Division (NSWCCD), in West
Bethesda, Maryland: Aleksandr from 1989 to 2003, Yuri from 1987
to the present.  In each of their lawsuits, they allege that
they were discriminated against because of their national
origin, their age, and in retaliation for having filed previous
charges of employment discrimination.  As discussed below, the
alleged discrimination and retaliation primarily took the form
of denied promotions, but also included undesired work
assignments, undesired transfers, and restrictions on time spent
on and communications about claims they were bringing before the
Equal Employment Opportunity Commission (EEOC).[2]

Because of the volume of cases filed by Plaintiff and his
brother and the massive amounts of filings in each action, the
Court entered an order restricting Plaintiff to one active case
at a time.  See ECF No. 12 in Civil Action No. AMD-06-1244.

---

[1] See Stoyanov v. Winter, Civ. Nos. RDB-05-1567 and RDB-05-1611,
2007 WL 2359771 (D. Md. Aug. 15, 2007) (listing cases pending as
of August 2007).  Plaintiff has also filed claims with the
Office of Counsel ("OSC"), alleging violations of the
Whistleblower Protection Act, 5 U.S.C. § 1221 et seq.  See
Stoyanov v. Merit Sys. Protection Bd., 218 F. App'x 988 (Fed.
2007), cert. denied, Stoyanov v. Dept. of Navy, 552 U.S. 887,
128 S. Ct. 247 (2007).

[2] Plaintiff has filed dozens of charges of discrimination and
retaliation with the EEOC.

Several of Plaintiff's lawsuits have faced dispositive motions. In every case, this Court has either dismissed Plaintiff's claims or entered summary judgment against Plaintiff and the Fourth Circuit has upheld those decisions.  See Stoyanov v. Mabus, 2009 WL 4884518 (D. Md. Dec. 9, 2009) (Quarles, J.), aff'd, 385 F. App'x. 297 (4th Cir. June 24, 2010); Stoyanov v. Winter, 2008 WL 6722765 (D. Md. Aug. 11, 2008) (Davis, J.), aff'd, 305 F. App'x. 945 (4th Cir. Jan. 15, 2009), cert. denied, 130 S. Ct. 57 (2009); Stoyanov v. Winter, 2007 WL 2359771 (D. Md. Aug. 15, 2007) (Bennett, J.), aff'd, 266 F. App'x. 294 (4th Cir. Feb. 25, 2008), cert. denied, 129 S. Ct. 258 (2008).

The two cases before Judge Bennett – one filed by Yuri and one by Aleksandr - covered alleged discrimination during the period November 1989 through early 2002.  The Stoyanovs alleged at least six incidents of "fraudulent promotion" during that period, i.e., incidents where others were promoted despite the Stoyanovs' self-assessed superior qualifications.  In reviewing the fraudulent promotion claims, Judge Bennett noted that one of the promotions alleged to be discriminatory actually occurred "approximately eight days before [the Stoyanovs] began their 'permanent' career positions at NSWCCD."  2007 WL 2359771 at *7 (emphasis in original).  The Court also noted that, despite the Stoyanovs' claims of age discrimination, several of those promoted were the same age as or very close in age to the

Stoyanovs.  Id. at *8 (at the time of the promotion, the
promoted individual, Kevin Wilson, was 43 years old, the same
age as the Stoyanovs); id. at *9 (promoted individual was 43
years old, the Stoyanovs 46 years old); id. at *10 (promoted
individual was 41 years old, the Stoyanovs 45 years old).[3]  In
addition, despite the Stoyanovs' claim that they were retaliated
against because of EEOC activity, the Court noted that most of
the promotions that the Stoyanovs contended were fraudulent
"occurred before [the Stoyanovs] sought EEO counseling."  Id. at
*20.

In addition to fraudulent promotions, Plaintiff also
complained in his case before Judge Bennett about other conduct
of his employer that he found discriminatory and retaliatory.
Plaintiff asserted that he was denied "directly funded work, was
excluded from managing projects, and was not assigned to
positions of higher responsibility."  Id.  Regarding "directly
funded work," Defendants explain that NSWCCD is a "Navy Working
Capital Funded Organization," which means that it receives its
working funds from the work it performs for "sponsors," either
the government or private industry.  ECF No. 26 at 3.  An
employee of NSWCCD can be funded in two ways, either direct

---

[3] At the time of the first alleged fraudulent promotion, the
Stoyanovs were only 34 years old and the promoted individual was
32.  Id. at *7.  To begin to state a claim under the Age
Discrimination in Employment Act, 29 U.S.C. § 621 et seq.
(ADEA), a plaintiff must be at least 40 years of age.

funding derived from specific work funded by a NSWCCD sponsor, or overhead funding that comes out of NSWCCD's overhead. Senior Engineers are expected to submit grants and develop sponsors and direct funding. The defendants in Judge Bennett's case refuted claims that Plaintiff was assigned work on a discriminatory basis, providing evidence that Plaintiff was assigned to manage projects of higher responsibility but that, when assigned to those projects, if he "could not be the project leader, he did not want to work on the project." 2007 WL 2359771 at *20. Furthermore, the defendants explained that Plaintiff experienced difficulty getting funded work because "he submitted the same proposals time and time again, and such proposals were of no interest to sponsors or did not benefit the Navy." Id.

In the case before Judge Bennett, Plaintiff also complained that his supervisor interfered with his work, specifically, that his supervisor "called meetings to discuss the work status but was incompetent to understand" the nature of Plaintiff's work. Id. at *19. The defendants countered that Plaintiff should have expected that his supervisors would be kept informed as to the projects on which he worked and that there was no indication that his supervisor was motivated by any discriminatory animus. As to each and every one of Plaintiff's claims, Judge Bennett concluded that Plaintiff supported them with "nothing more than conclusory statements and declarations." Id., passim.

In ruling on the defendants' summary judgment motion, Judge Bennett also commented upon the manner in which Plaintiff conducted himself before the Court. At the motions hearing, Judge Bennett noted that the Stoyanovs "repeatedly accused Defendants' counsel of, inter alia, committing egregious acts - including conspiring with the Administrative Law Judge who presided over Plaintiffs' prior administrative action to cover up discriminatory conduct – and intentionally misrepresenting facts to this Court." Id. at *1. In response to those allegations, Judge Bennett concluded "that there is absolutely no basis for such accusations" and observed, "the continual ad hominem nature of Plaintiffs' complaints was exemplified by Plaintiffs' conduct at the hearing. At times, Plaintiffs seemed to suggest that this Court has some bias against Plaintiffs." Id. Judge Bennett also denied the Stoyanovs' request to supplement the record from the hearing, observing that the request "reflects the same rambling allegations of corruption on the part of agency officials without any foundation." Id. at *1 n.1.

In the case before Judge Davis, Plaintiff complained of alleged adverse employment actions that occurred between spring 2002 and December 2002. 2008 WL 6722765 at *1. Judge Davis described the gravamen of Plaintiff's claims as:

on the basis [of] his age, national origin and/or in retaliation for his having engaged in protected activity, the Navy refused to promote or reassign plaintiff. Plaintiff feels aggrieved by his inability to secure a promotion to an ND-5 level position,[4] or a reassignment that might lead to a better opportunity for such a promotion, in some cases because he was allegedly denied the opportunity to apply and in others because another candidate was selected over plaintiff. He essentially argues that every occasion on which an ND-5 vacancy became available and he was not promoted was an incident of discrimination.

Id. at 2. After reviewing the five particular occasions on which others were promoted to ND-5, Judge Davis concluded, "Plaintiff has not produced any meaningful evidence to suggest that his age, Russian origin, or prior complaints were factors in his inability to secure a promotion to an ND-5 level position. Stoyanov's arguments are based on his own conspiratorial theories and conclusory leaps in reasoning rather than evidence." Id. at *3.

The case before Judge Quarles addressed Plaintiff's allegations of discrimination and retaliation occurring between spring 2003 and spring 2004. 2009 WL 4884518 at *1. As in the previous two cases, Plaintiff asserted complaints related to his employer's failure to promote him to an ND-5 position. Plaintiff pointed the Court to three other individuals that he believed were less qualified than he for the positions into which they were promoted. Judge Quarles concluded that

---

[4] Plaintiff was during the relevant time period and apparently remains at an ND-4 level.

Plaintiff had "no evidence that the selection processes were biased or that he was a more qualified candidate."  Id. at *5. In setting out the qualifications for these positions, Judge Quarles noted the requirement that the successful candidate be able to "collaborate and negotiate for the mutual benefit of all involved."  Id. at *2 n.23.  Among the reasons that the selected candidates were ranked higher than Plaintiff was the ability to "work[] well with others."  Id. at *5.

In addition to these failure to promote claims, Plaintiff included in the case before Judge Quarles complaints about actions taken by his supervisors.  Plaintiff asserts that his supervisors discriminated and retaliated against him by, inter alia: requiring him to submit weekly status reports; requiring him to check in and out at a particular building, Building 3, and following him while he was in that building; threatening disciplinary action; and requiring him to produce a doctor's note when he used sick leave.  Id.  Judge Quarles concluded that the "undisputed evidence shows legitimate, nondiscriminatory reasons" for each of these actions.  Id. at *6.  For example, the evidence showed that the threat of discipline "was a response to Stoyanov's disrespectful behavior;"[5] Plaintiff was required to provide a doctor's note because he engaged in a

---

[5] Plaintiff was admonished by the EEOC Administrative judge for "disrespectful, degrading and insulting conduct."  Id. at *2.

"pattern of sick leave usage which suggested abuse;" and Plaintiff was monitored at Building 3 "because he had falsely reported his time entries." Id.

As he did in the previous cases, and as he does now in the case before the undersigned, Plaintiff sought sanctions against defense counsel from Judge Quarles for what he characterized as deliberate misrepresentations of fact. Judge Quarles rejected Plaintiff's request for sanctions, concluding that Plaintiff had not shown that counsel had made any factual errors or omissions but that Plaintiff "merely disagrees with the Defendants' characterization of the facts supporting their legal arguments." Id. at *8. He also rejected Plaintiff's reference to "trivial difference[s] in job titles" employed by the defendants as a basis for sanctions. Id.

In the instant suit, Plaintiff also alleges many of the same kinds of discriminatory and retaliatory actions as presented in his previous three suits, but now for the time period March 2004 through July 2004. Plaintiff sets out these allegations in twelve "claims:"

> Claim #1 – He was denied directly funded work and was forced to work on extended overhead projects, he was assigned to RTS[6] production work with which he was not familiar and he was denied requested training.

---

[6] Radar Target Strength (RTS) is a predictive modeling software used in many of the projects at NSWCCD.

Claim #2 – He was harassed regarding his search for funded work and his efforts to learn RTS modeling.

Claim #3 – He was assigned tasks on short notices with close deadlines.

Claim #4 – He was issued a "letter of requirement" that established certain time recording and sick leave procedures.

Claim #5 – Defendant Charles Behrle created a hostile work environment by failing to personally respond to and then by denying an EEO appeal.

Claim #6 – He was denied fair EEO process when individual numbers were not assigned to his two formal discrimination complaints dated April 10, 2004, and April 12, 2004.

Claim #7 – He was subjected to a hostile work environment when he was forbidden to mention his EEO activity in communications with his supervisors and was required to provide his supervisors with status reports on his work projects.

Claim #8 – He was harassed by Defendant Gary Jebsen's failure to timely respond to Plaintiff's appeal and Jebsen's refusal to participate in EEO counseling.

Claim #9 – Defendant Jebsen denied him an ND-5 Interdisciplinary Manager position that he instead awarded to Defendant Kevin Wilson, an individual with "inferior qualifications."

Claim #10 – Defendant Reuben Pitts denied Plaintiff a promotion to an ND-5 Program Manager/Administrative/ Technical Specialist position that instead went to Belinda Eisold.

Claim #11 – Defendant Jebsen "selected Mr. C. Minopoli with inferior qualification than Plaintiff's qualification" for an ND-5 Interdisiplinary Manager position.

Claim #12 – Defendant Jebsen "selected Mr. G. Jensen with inferior qualification than Plaintiff's

qualification" for an ND-5 Interdisiplinary Manager position.

Compl. ¶ 71.

Based upon these claims, Plaintiff asserts the following fourteen causes of action:

Count I – Violation of Title VII[7] (National Origin)

Count II – Violation of Title VII (Reprisal)

Count III – Violation of the ADEA[8]

Count IV – Violation of the Whistleblower Protection Act of 1989 (Public Law 101-12)[9]

Count V – Conspiracy to Violate Civil Rights

Count VI – Aiding and Abetting Violations of Civil Rights Laws

Count VII – Obstruction of Official Process

Count VIII – Abuse of Administrative Power

Count IX – Intentional Infliction of Emotional Distress

Count X - Fraud and Misrepresentation

Count XI – Obstruction of Justice by Defendant David Caron (Implied Private Right of Action)

Count XII – Malicious Abuse of Process

---

[7] Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

[8] Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq.

[9] 5 U.S.C. §§ 1221 et seq. (WPA).

Named as Defendants are Ray Mabus,[10] Secretary of the Navy, as well as various supervisors and other individuals affiliated with NSWCCD.

Defendants have now moved for dismissal or for summary judgment[11] as to all claims on a variety of grounds.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

---

[10] When this action was filed, the Secretary of the Navy was Donald Winter. Pursuant to Fed. R. Civ. P. 25(d), Secretary Mabus was automatically substituted for Secretary Winter.

[11] Although no discovery has been taken in this action, a substantial record was developed in the administrative proceedings and much of that record has been submitted to this Court with the parties' briefing. In light of that extensive record, the Court finds it appropriate to treat the motion as one for summary judgment. See Stoyanov v. Winter, Civ. No. AMD-06-1244, 2008 WL 6722765 at *1 (considering the motion as one for summary judgment without discovery); Stoyanov v. Mabus, Civ. No. WDQ-07-1764, 2009 WL 4884518 at *4 n.36 (same).

In considering the motion, the Court must "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in h[is] favor," Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002), but the Court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 526 (4th Cir. 2003). "[C]ourts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, [but] summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996).

**III. DISCUSSION**

In this action, Plaintiff brings many of the same claims and relies on many of the same theories that he included in his previous cases – claims and theories that were rejected by Judges Bennett, Davis, and Quarles. Plaintiff takes the position that the three prior decisions of this Court "were wrong and were based not on facts and the rule of law but on the rule of lies, deliberate misrepresentations, fraud and perjuries of Defendants." ECF No. 35 at 31. Plaintiff also believes that the Fourth Circuit merely "sanctioned [the] wrong district court

14

opinions." Id. at 31 n.3.  Regardless of Plaintiff's

conclusions as to the correctness of this Court's previous

decisions, the doctrines of res judicata and collateral estoppel

bar Plaintiff from re-litigating claims and issues previously

asserted.  See generally, Laurel Sand & Gravel, Inc. v. Wilson,

519 F.3d 156, 161-62 (4th Cir. 2008) (holding that res judicata

"bars a party from relitigating a claim that was decided or

could have been decided in an original suit" and was "designed

to protect litigants from the burden of relitigating an

identical issue with the same party or his privy and to promote

judicial economy by preventing needless litigation."); Collins

v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006)

(observing that collateral estoppel bars re-litigation of issues

that were actually decided as a critical and necessary part of a

final judgment after a full and fair opportunity for litigation

of those issues).

 Because many of Plaintiff's current claims, while not all

identical to claims raised in the previous action, are very

similar, many of Defendants' arguments advanced in the instant

action have been previously considered by this Court and need

not be discussed here at length.  For example, Judge Bennett, in

ruling on a motion to dismiss filed in the first case by

Plaintiff, held that "Title VII and the ADEA are the exclusive

remedies available to a federal employee complaining of

employment discrimination that is based on national origin,
retaliation, and age." Civ. No. RDB 05-1611, ECF No. 32 at 14
(D. Md. July 25, 2006). While Plaintiff attempts to cast his
claims in terms of both common law and constitutional torts and
as claims under the WPA,[12] they are plainly premised solely on
allegations of national origin discrimination, age
discrimination, and retribution for EEO activities or complaints
about the EEO process itself. Accordingly, the Court will
dismiss all but the first three counts of the Complaint, i.e.,
Plaintiff's claims for national origin discrimination and
retaliation under Title VII (Counts I and II) and his age
discrimination claim under the ADEA (Count III). This Court has
also previously instructed Plaintiff that claims cannot be
brought against individuals under Title VII or the ADEA. Id. at
*10; see also Birbeck v. Marvel Lighting Corp., 30 F.3d 507,
510-11 (4th Cir. 1994) (holding that there is no individual
liability under the ADEA); Lissau v. Southern Food Service,
Inc., 159 F.3d 177, 180 (4th Cir. 1998) (holding that
"supervisors are not liable in their individual capacities for
Title VII violations"). Therefore, claims against the
individual defendants will be dismissed.

---

[12] While Plaintiff repeatedly refers to his "Whistleblowing
activities," the only such activity that he identifies in his
Complaint is his going to the EEO or other government officials
to complain about alleged retaliation or national origin or age
discrimination.

Turning to Plaintiff's discrimination claims under Title VII and the ADEA, the Court notes that Plaintiff provides no direct evidence of discrimination. Thus, Plaintiff must rely on the three-part proof scheme outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff must first demonstrate a prima facie case of discrimination. Second, if the prima facie case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate, non-discriminatory reasons for the adverse employment actions. McDonnell, 411 U.S. at 802. Third, if the employer makes this showing, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons for the adverse employment action are pretextual. McDonnell, 411 U.S. at 804.

To establish a prima facie case of discrimination based on national origin or age, Plaintiff must show that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subjected to an adverse employment action; and (4) similarly situated employees outside his class received more favorable treatment. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (citing Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999)).

In this suit, there are two general categories of actions that Plaintiff complains were discriminatory.  First, Plaintiff complains about various actions taken by his supervisors that he deems to be harassing.[13]  Claims #1-#8.  Second, Plaintiff asserts four failure to promote claims – instances where others were promoted to ND-5 positions for which Plaintiff believes he was better qualified.  Claims #9-#12.  The Court will first address the failure to promote claims.

On April 15, 2002, an "open and continuous announcement" (OC announcement) was advertised via the Navy Human Resource Service Center – Northeast (Human Resource Center).  The Human Resource Center is not a part of NSWCCD but provides support to NSWCCD in personnel matters.  An OC announcement is a means by

---

[13] Plaintiff refers to some of these actions as creating a "hostile work environment."  To create a hostile work environment under Title VII, however, the harassment must be "sufficiently severe or pervasive to alter the conditions of [ ] employment and [ ] create an abusive environment."  Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006).  The "standard for proving an abusive work environment is intended to be a very high one because the standard is designed to filter out complaints attacking 'the ordinary tribulations of the workplace.'"  Wang v. Metro. Life Ins. Co., 334 F. Supp. 2d 853, 864 (D. Md. 2004).  To survive summary judgment, the conduct at issue supporting a hostile work environment claim must be far more severe than that of "a merely unpleasant working environment."  Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996).  "Courts usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance."  Tawwaab v. Va. Linen Serv., Inc., 729 F. Supp. 2d 757, 777 (D. Md. 2010).  Plaintiff's allegations fall far short of supporting such a claim.

which applicants can file a one-time application and resumé and submit it for consideration for positions thereafter announced under it. In early 2004, Plaintiff applied for the position of Head, Signature Technology Department which was advertised under this OC announcement. The Human Resource Center deemed Plaintiff qualified for the position and Plaintiff's name was referred on a "Competitive Certificate" to Gary Jebson, the selecting official. Seven other candidates were also listed on the Competitive Certificate. Defs.' Ex. 16.

The Human Resource Center, however, also forwarded to Jebson a "Non-competitive Certificate" listing the names of seven qualified "non-competitive" candidates. A non-competitive candidate in this context is an employee that is already employed at the grade level of the applied-for position, in this case, ND-5. Thus, a non-competitive candidate need not be promoted into the position but could be simply reassigned to the position.

Jebson states that, after receiving the candidate certificates, he determined that there were an adequate number of qualified ND-5 candidates on the non-competitive list that he need not interview anyone off the competitive list. Defs.' Ex. 18, Jebsen Decl. ¶ 12. Jebsen explained that the permissible number of ND-5 positions is limited and strictly controlled by the agency. Filling this position with an individual off the

non-competitive list would preserve a high grade slot for another position.  After interviewing the individuals on the non-competitive list, the interview panel unanimously selected Kevin Wilson who was then placed in that position.  Wilson had been serving as acting head of that department for some time.

The next position that Plaintiff believes should have been his was a Program Manager/Administrative Technical Specialist position announced in March of 2004.  Plaintiff was one of 28 individuals who applied for the position.  Diane Pelullo of the Human Resources Center, working with Pat Barrett of NSWCCD, processed the applications.  Pelullo stated that while Plaintiff was determined to be basically qualified, the review of his resumé did not result in a high enough score based on the four factors described in the knowledge, skills and abilities section of the job announcement to have his name forwarded to the selecting officer, Reuben Pitts.  The seven candidates that scored highest were referred to Pitts and, from that group, Pitts selected Belinda Eisold.

The next position that Plaintiff believes he should have been given was an ND-5 Division Head position in the Electromagnetic Signature Technology Department.  A request to fill this position was sent to the Human Resource Center in May of 2004 and Karen Evanish, a human resource specialist, was assigned to do the initial screening of resumés.  Evanish used

the "RESUMIX system" to do a computer search for individuals who submitted a resumé and whose skills matched the skills listed in the vacancy announcement for the position. Plaintiff's name did not appear on the match list generated by the RESUMIX system. In the EEOC investigation, Evanish explained that Plaintiff's name was not on the list either because he did not identify a "merit promotion announcement" on the "additional data sheet" on his resumé, or because he did not identify himself as a Department of the Navy employee on his additional data sheet. Defs.' Ex. 25 at 2. Evanish manually reviewed the resumés that appeared on the match list and eligible candidates were forwarded to Gary Jebsen, the selecting official. Ciro Minopoli was ultimately selected for the position.

Finally, at least in this particular litigation, Plaintiff asserts that he should have been promoted to a Deputy Division Head position in the Electromagnetic Signature Technology Department. The Request for Personnel Action that opened this position in June 2004 specifically stated that the agency was looking for a non-competitive certificate of eligible candidates, i.e., it was looking for candidates who were already at the ND-5 pay grade level. Id. This preference was consistent with the agency's attempt to conserve limited ND-5 billets. Plaintiff was not included on the non-competitive

certificate that was forwarded to Jebsen as he was not an ND-5. Jebsen selected Garth Jensen for the position.

To establish a prima facie case in the specific context of failure to promote claims, plaintiffs must show that they: (1) are members of a protected class; (2) applied for the position(s) in question; (3) were qualified for each position; and (4) were rejected for each position under circumstances giving rise to an inference of unlawful discrimination. Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

It is doubtful that Plaintiff could establish a prima facie case of discrimination related to any of these denials of promotion as there is nothing about the circumstances surrounding the promotions that would give rise to an inference of discrimination.  For example, as to the position awarded to Wilson, any claim of age discrimination is undermined by the fact that Wilson is the same age as Plaintiff.  Another successful candidate, Eisold, is believed to be a few years older than Plaintiff.  See Defs.' Ex. 23, Pitts Decl. ¶ 8.  In addition, several of those that played critical roles in the selection process indicate that they had never met Plaintiff and were unaware at the time of their participation in the selection process of Plaintiff's age, national origin, or prior EEO

activity.  See Defs.' Ex. 22, Pelullo Decl. ¶ 7; Defs.' Ex. 23,
Pitts Decl. ¶ 8.

Were the Court to assume for purposes of this motion that
Plaintiff could establish a prima facie case of discrimination
related to these denials of promotion, the Court would still
grant summary judgment as to those claims as Defendants have
established legitimate, non-discriminatory reasons for
Plaintiff's non-selection for each of these positions.  As to
the positions awarded to Wilson and Jensen, the agency made a
legitimate business decision to preserve a high-grade billet by
selecting an applicant that already held an ND-5 pay grade.  As
to the administrative position awarded by Pitts to Eisold,
Plaintiff was not considered for the position because he did not
score high enough on the knowledge, skills, and abilities
section of the job announcement.  As to the position awarded to
Minopoli, Plaintiff was not considered for that position because
he failed to accurately complete the additional data sheet and
application which resulted in the failure of the RESUMIX system
to place his name on the match list.

Plaintiff attempts to argue that these reasons are all
pretextual but those attempts are unavailing.  Plaintiff's
primary argument is premised on his own evaluation of his
relative qualifications.  Throughout his pleadings and
declarations and as to each position he repeats his self-

assessment: "I believe my knowledge, skill and experience are far more suited to the position" and that the selected individual had "far inferior qualifications."  Pl.'s Ex. 10b at 16 (discussing Eisold); Pl.'s Ex. 10 at 122 (opining about Wilson's "far inferior qualifications"); Pl's Ex. 10c at 10 ("I believe that any reasonable mind can see that Mr. Minopoli's qualifications and experience were far inferior to mine."); id. at 12 ("I believe the Mr. Jensen's qualifications and experience were far inferior to mine.").

In supporting his opinion that he is more qualified, Plaintiff repeatedly emphasizes his status as a scientist with a PhD in Physics and numerous patents and publications to his credit.  See, e.g., Pl.'s Ex. 10 ("I have the Office of Naval Technology Postdoctoral training and experience in stealth technology since 1986 with over 60 reports and publications in national and international journals and conferences; I have filed patents and received patent awards; I believe the selectee does not have patents and publications."). Plaintiff, however, devotes little discussion to the qualifications of the successful candidate,[14]  nor does he provide much in the way of

---

[14] While Plaintiff occasionally opines concerning the qualifications of the successful applicants, see also, Pl.'s Ex. 10c at 9 (opining, without support, that Minopoli "has only a Batchelor's [sic] or Master [sic] degree in Engineering), he proffers no admissible evidence relating to the qualifications of the successful candidates.

explanation as to why his particular qualifications are well suited to a particular position. The Court notes that the position into which Eisold was promoted appears to be somewhat administrative in nature. While Plaintiff dismisses Eisold as a former "contractor's secretary,"[15] it is not apparent why his scientific background makes him better suited for this position.

The law is well settled that it is the employer's prerogative to establish the qualifications for a position, and that a plaintiff must, to establish pretext, show that he was the better qualified candidate with respect to those qualifications that the employer deemed important. See EEOC v. Fed. Reserve Bank of Richmond, 698 F.2d 633, 671 (4th Cir. 1983) (holding that an employer has the right to establish the qualifications that are "necessary or preferred" for a position and the plaintiff must show not only that he meets these qualifications to establish a prima facie case but also that he is superior to the selected candidate to establish pretext), rev'd in part on other grounds, Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867 (1983). Furthermore, a plaintiff's own self-interested assessment of his qualifications for a particular position is irrelevant and it is the decision maker's assessment that matters. Evans, 80 F.3d at 960-61.

---

[15] Again, Plaintiff provides no admissible evidence concerning Ms. Eisold's qualifications.

To establish pretext, Plaintiff also points to minor, irrelevant details that he contends demonstrate that those involved in the promotion decisions were lying to cover up unlawful discrimination.  For example, he repeatedly alleges that "Ms. Evanish is not credible and deliberately misrepresented facts."  Pl.'s Ex 9, passim.  As evidence, he cites a portion of her declaration where she states that she first became aware of Plaintiff's EEO activity "around February 3002."  Id. at 10.  Ignoring that this was obviously a typographical error, Plaintiff charges that "Ms. Evanish misrepresented facts when she became aware of my prior EEO activity.  'February 3002' is wrong.  Ms. Evanish knew about my brother's and my participation in EEO activities since 2002."  Id.  To refute Evanish's representation that she did not review Plaintiff's resume because he did not show up on the RESUMIX "match list," Plaintiff seizes on the fact that "Evanish admitted that she 'manually review [sic] the resumes.'"  Id. at 12.  Of course, Evanish only reviewed the resumés of those that appeared on the match list and thus Evanish's "admission" is not evidence of any misrepresentation.  As he did in previous cases, Plaintiff also points to trivial differences in job titles of various individuals as evidence of fraud.  ECF No. 38 at 3-4; see also Stoyanov v. Mabus, 2009 WL 4884518 at *8.  None of

these alleged "discrepancies" provide any support for
Plaintiff's assertion of pretext.

Because Defendants have established a legitimate non-
discriminatory reason for each of the promotion decisions,
Defendants are entitled to summary judgment as to these claims.

Turning to the alleged "harassing" conduct of Plaintiff's
supervisors, the Court notes that at least some of that alleged
conduct does not rise to the level of an "adverse employment
action" such that it could support a claim for age or national
origin discrimination.  "An adverse employment action is a
discriminatory act that 'adversely affect[s] the terms,
conditions, or benefits of the plaintiff's employment.  The mere
fact that a new job assignment is less appealing to the
employee, however, does not constitute adverse employment
action.'"  Holland v. Washington Homes, Inc., 487 F.3d 208, 219
(4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc.,
368 F.3d 371, 375-6 (4th Cir. 2004)).  An action that "merely
causes an employee irritation or inconvenience, but does not
affect a term, condition, or benefit of her employment, is not
an adverse employment action.  Spriggs v. Public Service Comm'n
of Md., 197 F. Supp. 2d 388, 393 (D. Md. 2002).  Furthermore,
"terms, conditions, or benefits of a person's employment do not
typically, if ever, include general immunity from the
application of basic employment policies or exemption from [an

employer's] disciplinary procedures."  Skipper v. Giant Food,
Inc., 187 F. Supp. 2d 490, 493 (D. Md. 2002).

The Court is cognizant that Plaintiff is also bringing
claims of retaliation.  The prima facia case for retaliation is
similar to that for discrimination but not identical.  To
establish a prima facie case of retaliation under Title VII,
Plaintiff must demonstrate that (1) he engaged in protected
activity, (2) a reasonable employee would have found the
challenged action materially adverse, and (3) there was a causal
connection between the activity and the challenged action.  See
Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68
(2006); EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405-06
(4th Cir. 2005).  In Burlington, the Supreme Court established
that "[t]he scope of the anti-retaliation provision extends
beyond workplace-related or employment-related retaliatory acts
and harm."  548 U.S. at 67.  Thus, unlike discrimination claims,
a plaintiff need not establish an "ultimate employment decision"
to satisfy the second prong of the prima facie test for a
retaliation claim.  Id.  Instead, a plaintiff must "show that a
reasonable employee would have found the challenged action
materially adverse.  Id. at 68.  Incidents such as "petty
slights, minor annoyances, and simple lack of good manners",
however, are still insufficient to support a claim of
retaliation even under this standard.  Id.

Again, were the Court to assume for purposes of this motion that the conduct of which Plaintiff complains rises to the level of adverse employment actions sufficient to support a prima facie case of discrimination or retaliation, Defendants would still be entitled to summary judgment.  As explained below, claims premised on this conduct were either considered and rejected by this Court in previous litigation or are actions for which Defendants have established legitimate, non-discriminatory or non-retaliatory reasons.

Plaintiff's claims regarding the denial of directly funded work have been raised and rejected in Plaintiff's previous actions.  See, 2007 WL 2359771 at *20.  In addition, Plaintiff's first level supervisor, Bruce Crock, explained that Plaintiff's skill set was not ideally suited for the type of work that his branch performs in that much of that work requires the use of RTS software.  Bruce Crock Dep. at 25-26.  Notwithstanding that Plaintiff was given the same opportunities to learn and study RTS as others in the branch and was given overhead time to be trained in the software, he was very slow in its mastery.  Had he been able to master RTS more quickly, he would have had access to more directly funded work.  Id. at 86-88.  While Plaintiff's request for formal training in related software was denied because there was no budget for such training, others in

the branch were able to learn the software without the formal
classes requested by Plaintiff.  Id. at 95.

    Defendants also noted that it was expected of all senior
engineers that they make proposals to seek out funding.
Plaintiff would often ignore requests for proposals and had to
be reminded to follow through.  Kevin Wilson Dep. at 32.  Wilson
also noted that when Plaintiff did seek out directly funded
work, he often did it in a manner that was a disservice to
himself and his division.  For example, in emails sent by
Plaintiff seeking directly funded work, Plaintiff devotes a
significant portion of the emails to complaints about his
supervisors and discussion of his EEOC activity, highlighting
that he and his brother "have filed over twenty formal
discrimination complaints and complaints of reprisal."  Defs.'
Ex. 6.  When one of the responses to his requests for directly
funded work mentioned the possibility of work that involved
significant travel, Plaintiff responded that he is "bound to
work in the Washington DC area because of my participation in
job related EEO activity."  Id.

    These emails provide some insight into the prohibition
instituted by Plaintiff's supervisors regarding Plaintiff's
discussion of his EEO activities in his work related
communications, a prohibition that Plaintiff views as
harassment.  In an email exchange with Crock, Plaintiff

complained that the requirement that he account for his use of time was "counterproductive and discriminatory." Defs. Ex. 12. Crock responded simply that "You have been provided with avenues for filing grievances. This commentary does not belong in technical writing. Stop writing about this immediately." Id. When Plaintiff complained that Kevin Wilson, his second level supervisor, was harassing him by requiring that Plaintiff submit "mini-plans" detailing his work activities, Wilson responded,

> I asked you what you were working on per management's right to manage, I did not harass you. However, I did specifically direct you that your mini-plan submission should include only technical content . . . targets, underlying physics, schedules, etc. . . as described before, and that discussion of your EEO complaint was inappropriate to that subject. You have a separate, acknowledged avenue to pursue your EEO complaint . . . . As such, I expect you to keep EEO discussions separate from your technical correspondence and deliverables now and in the future."

Defs. Ex. 7. The Court finds that there is nothing inappropriate or unlawful with such restrictions.

The Court also finds nothing inappropriate or unlawful about the requirement that Plaintiff report to his supervisors the planned and actual progress of his work projects. Because his supervisors had not observed him in the computer training room practicing RTS and as he was working on unplanned overhead time, which is a limited resource, Defendants had a legitimate business purpose to request these reports. While other employees may not have been subjected to the same reporting

requirements, they were also not experiencing the same difficulties in mastering the RTS system.

Plaintiff also complains he was asked to perform two "tasks on short notices with close deadlines." Compl. ¶ 71. One of those tasks was to produce the "mini-plan" referenced above. The other was to produce guidelines regarding a technical issue. The Court notes that Plaintiff was able to accomplish both tasks within the time allowed and finds nothing discriminatory in these requests.

Claims based upon the remaining alleged conduct of Defendants all fail for similar reasons. Some, like his complaints concerning restrictions on sick leave and time recordation, were previously addressed by this Court and found meritless. See, 2009 WL 4884518 at *6. Others, like his complaint that a human resources employee did not assign individual claim numbers to two of his charges of discrimination or other complaint about the EEO process itself, cannot form the basis of a Title VII or ADEA claim. See 29 C.F.R. § 1614.107(a)(8) (directing that the EEOC shall dismiss charges alleging "dissatisfaction with the processing of a previously filed complaint").

## IV. CONCLUSION

Plaintiff may well be a brilliant scientist and is obviously disappointed and frustrated that he has not advanced

further in his career at NSWCCD.  From the record before this
Court, however, it is abundantly clear that the reason for that
failure is neither discrimination nor retaliation.  Plaintiff is
quick to label anyone and everyone with whom he disagrees as a
member of a vast conspiracy against him and accuses each of them
of malicious and fraudulent conduct.  Plaintiff casts many of
the same dispersions on this Court and, no doubt, will continue
to do so.  It is that attitude toward his co-workers and others
that is a far more plausible reason for the difficulties that
Plaintiff is experiencing in his employment.

For the above stated reasons, the Court will grant
Defendants' motion and dismiss this action.  A separate order
will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: September 20, 2011